```
 1              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MASSACHUSETTS
 2
                                    Civil Action
 3                                  No. 12-10326-WGY

 4
    * * * * * * * * * * * * * *
 5                              *
    FRIEDRICH LU,               *
 6                              *
         Plaintiff,            *   TRANSCRIPT OF
 7                              *   CLOSING ARGUMENTS,
         v.                     *   JURY INSTRUCTIONS
 8                              *   and THE VERDICT
    BRENDAN ENGLAND             *      (Volume 3)
 9  and STEPHEN HORGAN,         *
                                *
10       Defendants.            *
                                *
11  * * * * * * * * * * * * * *

12

13

14           BEFORE:  The Honorable William G. Young,
                        District Judge, and a Jury
15

16  APPEARANCES:

17           FRIEDRICH LU, Pro Se, 444 Harrison Avenue,
         Boston, Massachusetts 02118
18
             JULIE A. CIOLLO and NICOLE M. LOUGHLIN,
19       Assistants Corporation Counsel, City of Boston Law
         Department, One City Hall Plaza, Room 615, Boston,
20       Massachusetts 02201, on behalf of Brendan England
         and Stephen Horgan
21

22

23
                            1 Courthouse Way
24                          Boston, Massachusetts 02210

25                          April 10, 2013
```

1                           **I N D E X**

2

3    Closing Argument by Ms. Loughlin . . . . . . . . .   6

4    Closing Argument by Mr. Lu . . . . . . . . . . . .  13

5    Jury Instructions  . . . . . . . . . . . . . . . .  23

6    Verdict  . . . . . . . . . . . . . . . . . . . . .  51

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1     **THE CLERK:**  All rise for the jury.

2    (Whereupon the jury entered the courtroom.)

3     **THE CLERK:**  Court is in session, you may be seated.

4     **THE COURT:**  Good morning, ladies and gentlemen.

5     **THE JURY:**  Good morning.

6     **THE COURT:**  Thank you so much for being on time.

7 You've been right on time each day.  It really sets the tone

8 for these proceedings.  And because you're right on time

9 everybody's ready to go on.

10    What happens now is the parties stand before you

11 and, quite candidly, they'll argue that you should come out

12 one way or another.  That's an important part of the case

13 because it may help you understand the evidence that you've

14 gotten from the various witnesses.

15    I caution you in one respect.  Neither Mr. Lu nor

16 the attorneys here, they're not under oath now.  And so they

17 make their argument to you.  But if their argument strays at

18 all from the facts, well, I won't say the facts, because

19 that's for you, if it strays from the evidence, disregard

20 it.  It's the evidence that you decide whether the case is

21 proved or not proved.  But I know you'll give them the same

22 courteous attention that you've given each of the witnesses

23 as the witness has testified.

24    Now, because Mr. Lu bears the burden of proof by a

25 fair preponderance of the evidence, under the rules of Court

1   he gets a chance to argue last, to have the last word, the

2   last argument, and so it's Mr. Horgan's attorney now who

3   will argue first.  And -- well, you may proceed.

4           **MR. LU:**  Can I have a side bar?

5           **THE COURT:**  You may.

6           **MR. LU:**  Briefly.

7   SIDEBAR CONFERENCE, AS FOLLOWS:

8           **THE COURT:**  That actually gives me a chance to say

9   something, Mr. Lu.  Understand that the focus of your case

10  now is on the search.  You say the search was wrong.  And

11  I'm allowing your case, notwithstanding their motions, to be

12  decided by the jury.

13          **MR. LU:**  I think we need some word modifications

14  because seizures include, include personal effects.  So I

15  don't think search --

16          **THE COURT:**  Oh, yes.

17          **MR. LU:**  Okay.  Okay.

18          **THE COURT:**  Oh, yes.  The fact that your personal

19  effects were --

20          **MR. LU:**  Seized.

21          **THE COURT:**  -- spread out on the ground there, you

22  may argue that that caused you harm.

23          **MR. LU:**  Okay.  Cause you harm did you say?

24          **THE COURT:**  Caused you harm.

25          **MR. LU:**  Okay.  Okay.  I only want to say two

1    things.  The first thing, yesterday afternoon they file

2    papers.

3           **THE COURT:**  They did.

4           **MR. LU:**  Yes.  The last one I just went down to

5    check, I didn't receive that.  I didn't receive that.

6           **THE COURT:**  Oh, the jury form.  I'm not following

7    it anyway.

8           **MR. LU:**  Okay.  Okay.  Then --

9           **THE COURT:**  It's a general verdict.

10          **MR. LU:**  Yes.

11          **THE COURT:**  They either find for Mr. Horgan or they

12   find for you and assess damages.

13          **MR. LU:**  Right.  I'm talking about the second

14   motion for --

15          **THE COURT:**  Judgment as matter of law.

16          **MR. LU:**  It ends at the close of case.

17          **THE COURT:**  They can renew that.

18          **MR. LU:**  I know.  But the original statement was

19   filed after they already -- no, no.  Firstly, I oppose that,

20   but if they can, I also want to make my own oral arguments

21   to you now.

22          **THE COURT:**  Not now.

23          **MR. LU:**  Okay.

24          **THE COURT:**  But after the verdict is returned, if

25   you were to win and they were then to press that motion --

1        **MR. LU:**  Okay.

2        **THE COURT:**  -- I'll hear you.

3        **MR. LU:**  I'm sorry, I misunderstood.  At the close

4   of the case means close of the whole case, after the verdict

5   or --

6        **THE COURT:**  No, close of the case means the close

7   of the evidence.

8        **MR. LU:**  Oh.  But then I want to say that it

9   should, it should be before me because they were --

10       **THE COURT:**  Well, you want to say that, but you can

11  say it --

12       **MR. LU:**  Okay.

13       **THE COURT:**  -- once we've heard what the jury says.

14       **MR. LU:**  Okay.  The last thing I want to say, just

15  to save time, I request a jury instruction for search and

16  seizures of personal effects.

17       **THE COURT:**  Yes.

18       **MR. LU:**  That's all.  Thank you.

19       **THE COURT:**  I'm going to give it.

20       **MR. LU:**  Thank you.

21       (Whereupon the sidebar conference concluded.)

22       **THE COURT:**  Ms. Loughlin.

23       **MS. LOUGHLIN:**  Good morning, ladies and gentlemen.

24  My name is Nicole Loughlin.  First of all, thank you very

25  much for your time here and attention throughout these

1    couple of days.  I know that Officer Horgan appreciates it

2    and I'm sure that Mr. Lu does as well.

3            As my co-counsel, Julie, mentioned to you at the

4    very beginning of this case, it really comes down to two

5    things, safety and reasonableness.  Did Officer Horgan do

6    what was reasonably necessary that day to ensure the safety

7    of everyone involved.

8            Judge Young is going to talk to you about the law.

9    I'll give you a bit of a preview.  The law requires that

10   searches be reasonable.  So reasonable is kind of our key

11   word here today.  It's up to you as the jurors to determine

12   whether the search of Mr. Lu's pockets that day was

13   reasonable.  So let's go over the evidence that you've heard

14   over the past two days and I'll explain to you why it shows

15   that what Officer Horgan did that day was reasonable.

16           First, let's look at the situation with which he

17   was confronted.  It's a 911 call over dispatch about an

18   assault that had just taken place at the Shaw's at the

19   Prudential Center.  He responds to the scene with his

20   partner, Officer O'Donnell, and he comes upon Mr. Lu who

21   matches the description to a tee that was put over the

22   radio.

23           So, Mr. Lu is stopped, but Mr. Lu doesn't want to

24   cooperate.  He told you himself that he wanted to plead the

25   Fifth, when they just wanted to know his name, when he asked

1    for identification, but more importantly, he doesn't want to

2    put his bags down, he doesn't want to show his hands.

3            Now, something had gone down at the Shaw's

4    Supermarket.  Mr. Lu told you himself that he had some sort

5    of forceful encounter with a woman there.  He heard her make

6    a call to 911 that he had hit her.  And he even went back to

7    the store, he told you, to leave his name and address in

8    case this woman wanted to seek legal recourse against him.

9            And Mr. Lu was forceful with the officers, too,

10   when they stopped him.  They couldn't even conduct a

11   threshold inquiry without putting him in handcuffs for their

12   own safety.  So, it really shouldn't have come as a shock to

13   Mr. Lu when he was stopped by the officers that day.  But he

14   was, and he was combative.

15           And it's not just Officer Horgan who told you that

16   he was being uncooperative, aggressive, combative that day.

17   You heard from Officer England and he told you that when he

18   approached Mr. Lu, Mr. Lu immediately didn't want to answer

19   any questions and he was doing something called blading or

20   turning to the side in an aggressive way.

21           He also told you that Mr. Lu was refusing to put

22   his bags down and refusing to show his hands.  And you heard

23   from Officer O'Donnell, and he said that he was on the

24   scene, too, and he agreed that Mr. Lu was not being

25   cooperative.  He was backing away and flailing his arms,

1   moving his hips around when the officers were just trying to

2   do their jobs.

3        And you heard what was going through Officer

4   Horgan's mind at that time.  And he explained to you why it

5   was so important that Mr. Lu put his bags down and show his

6   hands.

7        First and foremost, it's a safety issue, Police

8   Officer 101, that if you can't see someone's hands that's a

9   dangerous situation for you.  So when Mr. Lu wasn't showing

10  his hands and wasn't putting his bags down, it immediately

11  raises a red flag to Officer Horgan that Mr. Lu's trying to

12  hide something here.  And in this case it's probably a

13  weapon.  So if you're thinking to yourself, well, why did he

14  think it was a weapon, well, first of all, he's already

15  carrying a stick with him.  Officer Horgan told you about

16  the plus one rule where if someone's already carrying one

17  weapon it's likely that he's carrying another.  Add to this

18  the fact that Mr. Lu wasn't cooperating, he was doing the

19  blading move, he was being combative, and the fact that he

20  appeared to be homeless.

21       Officer Horgan told you that in his experience

22  homeless people often carry something on them in order to

23  protect themselves.  And that something isn't usually

24  obvious, it's not a butcher knife or a pistol, it's

25  something more commonplace, like a pen, pencil, razor blade,

1    toothbrush, anything that can be fashioned into a weapon.

2            So, Mr. Lu is stopped and he's handcuffed.  He told

3    you that the officers removed the bags from his hands, after

4    he was handcuffed, and he told you that the officers were

5    perfectly polite and affable.  To use his phrase, he said

6    that the officers said that he would keep these for you,

7    that they would hold onto his bags for him.

8            It's clear that they weren't trying to disrespect

9    Mr. Lu or his property that day.  And after he's handcuffed

10   he's patted down.  Again, par for the course.  And Officer

11   Horgan told you that as he patted Mr. Lu down he felt all

12   kinds of objects on Mr. Lu's person, including hard objects.

13           So, he did what was necessary, removed the items

14   from Mr. Lu's pockets.  Mr. Lu told you himself he was

15   carrying his disposable razor that day, he was carrying his

16   toothbrush, he was carrying upwards of ten pens and pencils.

17   So, yeah, the items were removed.

18           And was it reasonable under the circumstances?

19   Yeah.  Again, you have to look at the whole picture.  The

20   911 call about the violent crime.  Mr. Lu matches the

21   description.  Mr. Lu won't tell him his name, won't

22   cooperate, won't put his bags down, won't show his hands.

23   Add to this the fact that he's blading, he's being

24   aggressive.  And the officer conducted a pat-down which

25   revealed that, yeah, he had all kinds of objects on his

1    person.  Add all these things up it's clear that what

2    Officer Horgan did that day was reasonable.  And Officer

3    Horgan has told you point blank, yeah, I searched his

4    pockets.  He has nothing to hide here.  He has no reason to

5    worry about what he did that day.  And you'll get to see the

6    FIO report, that's what he filled out, and on that he

7    checked off that he stopped Mr. Lu, pat frisked him,

8    searched him, all the paperwork's on the up and up.  Think

9    about it, if Officer Horgan was a little worried about what

10   he did that day he could have conveniently left out of his

11   report that whole search.  But he didn't do that.  He filled

12   it out.  You'll get to see it.  And he gave it to his

13   supervisor for review.

14        The evidence clearly shows that Officer Horgan

15   didn't search Mr. Lu's pockets because he had it out for Mr.

16   Lu or just for kicks.  He did it because that's what it took

17   for him to do his job.

18        Mr. Lu isn't a bad guy.  No one's saying that he

19   is.  He's been perfectly respectful throughout the course of

20   this trial.  But it's not his courtroom demeanor that's at

21   issue here.  It's his behavior on June 26th, 2011, and his

22   decision to be combative, evasive, and uncooperative that

23   morning.

24        So, a very routine stop quickly escalated into a

25   situation that was dangerous for the officers.  But Mr. Lu

1    is eventually unhandcuffed and he's told by Officer Horgan

2    that he's free to leave and collect his property.  He wasn't

3    arrested.  He could have been for disturbing the peace,

4    disorderly conduct.  But Officer Horgan told you he thinks

5    he cut him a break and told Mr. Lu that he was free to

6    leave.  What was Mr. Lu's response?  He said I'm going to

7    sue you.  And he made good on that promise and that's why

8    we're here today.

9         But keep in mind it's Mr. Lu's burden here today to

10   prove to you that what the officer did that day was

11   unreasonable.  And he hasn't done that.  He hasn't elicited

12   any testimony or evidence showing what the officer did was

13   unreasonable.  Instead, he's talked about a lot of things

14   that don't help him prove his case at all.  He's talked

15   about whether he was carrying a Snapple bottle, whether the

16   officers were poking his objects with a twig, what time the

17   incident report was filled out, when it was submitted to the

18   computer.  None of these things help Mr. Lu prove his case.

19   And that's because he can't.  Because what Officer Horgan

20   did that day was reasonable.

21        So, when you go back to the jury room please just

22   use your common sense.  Think about what any reasonable

23   police officer would have done in that circumstance, and

24   think about what you would have wanted a police officer to

25   do if you were in that spot that day.  And when you do that,

```
 1    I submit to you the only verdict that makes sense here is

 2    one in favor of Officer Horgan.

 3           Thank you very much.

 4           THE COURT:  Mr. Lu.

 5           MR. LU:  I have thirty minutes, but I will use only

 6    ten minutes.  I have a lot to say, but I'm also a man of few

 7    words.  So, I condense them.  And I appreciate your being

 8    here and thanks you for your time and the Court's time which

 9    is precious.

10           There are a few preliminary things I want to take

11    care of before I go to my arguments.  Firstly, in the

12    beginning of the case, the trial, the judge say something to

13    you.  I don't know what is the legal term for that word, for

14    that, I will say just statement.  So, the judge have some,

15    made a statement to you about reasonable search and seizure.

16    And that was Monday.  And I testified after that.  Then

17    yesterday morning a statement was made to focus the case,

18    the trial, to search your pockets and a seizure of personal

19    effects, E F F E C T S, under the Fourth Amendment.

20           And secondly, I want to, what I want to say is that

21    race have nothing to do with, in this case.  And I have been

22    in the United States for 28 years.  And I honestly don't

23    believe that I've been treated differently, even though I

24    always want to go back to Taiwan to bring everything back.

25           But because of that, I always consider myself as a
```

1    guest and an honor to have been treated as your guest.  And

2    so, during my testimony, I said all of the police officers

3    were white.  That was a fact.  Not -- I didn't entirely say.

4    And actually when I was stopped, after, after I was

5    handcuffed and my belongings was thrown in the garbage bins,

6    neither Officers Horgans nor Officer Englands knew the one

7    who made the 911 call, Ms. Hooks was back.  I didn't testify

8    to that in my direct examination.

9           So, certainly because of the judge instructions, I

10   come to this case with some, some decision on me.  And

11   actually there are more evidences.

12          Monday after the trial, after the trial in the

13   afternoon I went to the mall's owners.  They were happy to

14   provide a videotape or video camera, just stopped by them.

15   But I didn't have subpoena power.  So, you and I are stuck

16   with the humans testimony.  And so, I would, this is my

17   observations in the sense I'm not in the jury, in the

18   witness box, I didn't say what I think and what I was

19   thinking at what moment.  And so, I will start with Ms.

20   Hooks.

21          The case was allowed to go forward on January 10th

22   of this years.  Then on the date, it appears yesterday

23   morning defendants have papers saying that they would call

24   Ms. Hooks.  But they did not.  They didn't explain anything.

25   If she did have a grievance against me she was entitled to

1    and I submit she would have come to, come to, under the

2    legal scheme of the state law either sue me in the civil

3    court or complain against me in the criminal state court.

4    She did not.  And she, and she had this opportunity to come.

5    She did not come.  And the reason for that, I won't waste

6    your time.

7           And then you come to officer -- I'm sorry.  For

8    simplicity of the case, I will just not mention titles, I

9    will just mention the last name so that way it will be

10   easier for us.

11          Actually Ridge and O'Donnells, they didn't want to

12   come to this courtroom to testify or to my, to my

13   deposition.  They were forced to come.  And you --

14          **MS. CIOLLO:**  Objection, your Honor.

15          **THE COURT:**  Yes.

16          **MS. CIOLLO:**  May we be heard?

17          **THE COURT:**  Yes, you've got to -- no, the objection

18   is sustained.  Argue the things that happened in the

19   courtroom, not where you went outside of the courtroom.  But

20   argue from the evidence the jury has heard.  All right?

21          **MR. LU:**  Okay.  So, Ridge came, yes.  When he, when

22   he walked towards the witness stand he look on the ground.

23   After he sat he looked in that directions, not in, but faced

24   with the judge and he couldn't recall anything.  And there's

25   a reason for that.

1            Then I will come to O'Donnell.  O'Donnell make a

2     decisions, make his choice and to testify.  I will say this

3     to you now.  I have my own stereotype and prejudice.  So, at

4     the scene I saw, actually I testified that O'Donnells and

5     Ridge went into the Shaw's and they came back fifteen

6     minutes later and have a huddle in front of me.  But at that

7     times in the huddles only Horgans and England told me their

8     name.  I didn't know who was who about Horgans, about

9     O'Donnell and Ridge.  So I thought the bigger one, the husky

10    one was the one who seemed, who was talking and was, and was

11    the supervisors, who I, later this year I learned to be

12    Ridge.  So I assumed the big one was Ridge.  But he, when he

13    testified, I saw the big one was O'Donnell.

14            So, actually that was he who turn around and say to

15    me, say, first that he say in the huddle that there's

16    nothing I can do to him, and secondly, he, he said, turned

17    around to me and said:  Did you threaten her?

18            And at the end, after the handcuffs, I was, my

19    handcuffs were removed, he was on the curb, I asked him,

20    O'Donnell and Ridge, to order Horgan to remove, when I say

21    Horgan, to remove my belongings from the trash bins because

22    I thought he was, he was the boss.

23            So, when -- in the judge statement at the beginning

24    of trial he mention the standard of reasonable police

25    officers.  But you in this case also have another standard

1    for reasonable person like me and you.  When I was stopped,

2    I moved my Fifth Amendment right.  That's my constitutional

3    right.  And they said I was an uncooperative defendant.  But

4    there's no state law or city ordinance to require me to do

5    that.  But according to me, within 15 seconds or 20 seconds

6    my hands were handcuffed behind me.  And I guess my

7    testimony was that I have Snapple bottles in the handle or

8    the Shaw Supermarket shopping bags.  And so, it is

9    impossible that I had anything in my hands.  But according

10   to Horgans, I have a stick but no Snapples.  A stick.

11   Still -- and shopping bags.  So, still there, there could be

12   nothing in my hands.

13          But anyway, my handcuffed, according to me, my

14   hands, I was handcuffed about 15 or 20 seconds into the

15   stop.  None of the three officers can remember when I was

16   handcuffed.  Don't you think it's unusual?  And of course

17   Ridge couldn't recall anything.

18          Then I was -- I sensed something was wrong.  So, I

19   became alert.  Then when my belongings were stolen, was

20   dumped into the trash bins, my thinking was that he was

21   trying to provoke me, but I was not going to be provoked.

22          But then move fast forward.  When O'Donnell came

23   back with Ridge, remembers, none of the three other officers

24   remembers where Ridge was in the whole times.  Okay.  Then

25   when, after they came back, in the huddles, two yards away

     1     from me, I couldn't hear what, most of the statements,

     2     except O'Donnell said we couldn't do anything about him.  Of

     3     course I was shocked.  Why me, you know.  Why not Ms. -- the

     4     lady over theres.  Then he turned around and say:  Did you

     5     threaten her?  Of course, I have been reading law books for

     6     20 years.  I knew, depending on what I threatened her with,

     7     I could be charged with felony.  That's an arrestable

     8     offense.  That was Sunday.  I didn't want to, I didn't want

     9     to go to the jail arrested the next day.  And so, the whole

    10     time I was trying to protect myself.

    11           So, when the officer dumped my belongings, after, I

    12     didn't say anything, then after about, some time passed,

    13     about 30 seconds or one minute, I saw he got, it was later

    14     on, so I said to him:  May I have your name?  And he

    15     provides his name, Stephen Horgans.  And I said H O G A N?

    16     And then he said H O R G A N.

    17           During my direct testimony the judge asked me

    18     whether I could identify him in the courtroom.  I say I have

    19     poor eyesight.  I couldn't see for more than a yard away.

    20     But when I used to, I could do it much closers.

    21           So, even if at that time in my direct testimonies,

    22     even if Horgan or England or both stood in front of me, I

    23     could not identify them.  But, of course, the trash bin was

    24     about five yards away from me.  I couldn't see who the

    25     person, I couldn't see his appearance.  But I did ask his,

     1    his names.  And I remember very clearly.  And then I turn

     2    around to the officers beside me and I ask him and he say

     3    who he was.  I don't know why only -- after the statements

     4    made by the judge, the judge took them back saying there was

     5    only one defendants, not two or three stated.  Actually I

     6    want to come clean.  I dropped England.  And so that's why

     7    the judge came back.  And now I don't know why England took

     8    the, took the fall, but maybe he didn't want, England didn't

     9    want Horgan to look bad.  I don't have final say because the

    10    higher power came out here.

    11          So, so, I only, I would say two things.  Throughout

    12    the encounters, which last 30 minutes, my testimony was that

    13    O'Donnells and Ridge came back in the last 15 minutes.  But

    14    they couldn't -- disregard Ridge for the moment.  The three

    15    officers, Horgan, Englands and O'Donnell, couldn't remember

    16    anything I said.  Except they agreed, England and Horgans

    17    agreed that in the beginning when I asked and Horgan agreed

    18    that when I was stopped, I asked:  Am I under arrest?  Am I

    19    free to leave?  England said no.  And Horgans also testified

    20    that I refuse to provide my names and address, therefore,

    21    I'm uncooperative.

    22          But when I asked further what else did I say, none

    23    of the three can remember clearly except Horgans but not the

    24    other two say that in the end I turn to him and say:  I'm

    25    going to sue you.  Actually I sue two.  So -- because that

1    was the only two names I got.

2          So, a reasonable person at that times when I was

3    leaving would be glad that I was, I didn't get nothing

4    pinned on me, P I N N E D.  So count his blessings.

5          And then finally, about the stick.  Only Horgan say

6    he saw it, but not the other two.

7          All I'm saying is that you are entitled as ordinary

8    persons from your past experience to judge credibilities

9    here in the court.  Horgans, but not the other two, said

10   that, he said -- okay, go back, it's okay.

11         Okay, I will finish this part.  Horgan said he saw

12   the stick, which was necessary to provide a pretext for

13   frisk.  Then he empty all, empties all my pockets.  And then

14   he happen to saw a card after, afterwards.  So he picked it

15   up for outstanding warrant check.

16         He say that in my part of the case and in his part

17   of the case that he just emptied all the contents

18   inadvertent, inadvertently.  Intentionally he gave away his

19   case because he didn't, he didn't have a warrant.

20         But at the beginning, in the opening statements by

21   the defense counsels, they mention that I hit, with a stick

22   I hit the arm of that lady.  No one testified, no one on his

23   side testified about that.  And then she also say in this

24   opening statement there was a bulge in finding the weapons.

25   But even Horgans couldn't substantiate that.

1          Horgans testified that he empties my front two

2    pockets, too.  And so, therefore, he observed disposable

3    razors in, you know, not a razor, but in a stick.  B I C.

4    And the pens, the pencils, toothbrush.  But my testimony was

5    that he did not.  And I submit to you that what he, what he

6    knew about that from the content of my front pockets,

7    because I say so in my, in the deposition of me in

8    mid-January.  Then he appropriated that he really saw that.

9    He didn't attend.  None of the officer attend my deposition

10   on me.

11         So, I have prerogative within the limits of the

12   law, I dropped England.  And another case I have is to, to

13   drop, to say there was not, was this.  From the outset I

14   said there was more police.  And curiously Officer Horgan

15   didn't touch the front pockets, the contents of my front

16   pockets or touch that from the outside.

17         **THE COURT:**  Five more minutes, Mr. Lu.

18         **MR. LU:**  Okay.  Of course, I want you to say

19   believe them and that they will compensate me, but my

20   conscience won't allow me to do that.  There was no frisk

21   and so we're going to decide whether it's reasonable or

22   unreasonable.  And they was, he didn't empty the contents of

23   my front pockets which one of them contained cash, too.

24         So, you don't have to, you don't have to consider

25   that either, and that's my prerogative.  And even if it was

1    done, I can always waive that, W A I V E.

2            So, I guess that's all I want to say.

3            Oh, just one more thing.  In the closing arguments

4    the counsel was not testifying.  So she didn't, she was not

5    there.  She didn't know.  And no, none of his officers

6    obviously testify that.

7            This is not important, but I didn't order back to

8    the Shaw's to, by the managers over there to write down my

9    name and address.  I was ten yards away from out of the door

10   and they kind of walk fast to me and I thought it was

11   reasonable for them and for the, for the lady, too.  And so

12   that's why when the police officer got the name they didn't

13   went back, they didn't go back to her to give name, my name

14   and address to her because she had that already.

15           Thank you very much for your time.

16           **THE COURT:**  Would you folks come to the side bar

17   for just a moment.

18   SIDEBAR CONFERENCE, AS FOLLOWS:

19           **THE COURT:**  I just need to be clear on something,

20   Mr. Lu.  I heard you say, naturally, I'd like to be

21   compensated but my conscience won't allow it.  Do I

22   understand that you are not seeking damages here but rather

23   just a declaration?

24           **MR. LU:**  No, no.

25           **THE COURT:**  You want damages?

```
 1              MR. LU:  In my --

 2              THE COURT:  If you win.

 3              MR. LU:  In my --

 4              THE COURT:  I just want to know.  If you win, do

 5     you want to be compensated?

 6              MR. LU:  Yes.

 7              THE COURT:  All right.

 8              MR. LU:  But --

 9              THE COURT:  That's fine.  That's it.  I will

10     explain.

11              MR. LU:  Okay.

12              THE COURT:  I understand.

13              MS. CIOLLO:  Your Honor, we have one

14     additional point to make.  We just want to for the record

15     object to anything that was stated in the closing about --

16              THE COURT:  That's fine.  Well, that's fine.  We

17     can do it after we send the jury out.

18              MS. CIOLLO:  Thank you.

19              (Whereupon the sidebar conference concluded.)

20              THE COURT:  We come now to the point in the trial

21     where I instruct you as to the law that you must follow in

22     resolving this dispute between these two individuals.  I'm

23     going to start with the general and get to the specific.

24              Let's start as we did at the outset in considering

25     your role.  All twelve of you will deliberate.  You are all
```

     1    equal.  The verdict slip is very straightforward.  We'll

     2    pass it out in the middle of my discussion.  But what it

     3    says is we find for, and then I start with Mr. Horgan

     4    because it's Mr. Lu that has the burden of proof, or we find

     5    for Mr. Lu and assess damages, and I'll talk about that.  So

     6    that it's a straightforward verdict slip.

     7          Your verdict, however you come out on the question

     8    we ask you, must be unanimous, all twelve of you genuinely

     9    agreeing.  You will base your verdict solely and entirely on

    10    the evidence.  Now, anything I let you hear from a witness

    11    on the witness stand, that's evidence.  Plus, plus we have

    12    the exhibit of the police report and that electronic report.

    13    Those are exhibits.  That's what the evidence is in the

    14    case, and you base your determination on that evidence.

    15    That's left entirely to you, what you believe and what you

    16    don't believe.  But that's the evidence that you're going to

    17    consider.

    18          And you will consider it without bias, without

    19    prejudice, without sympathy or desire that anyone have

    20    revenge.  And I can't say it better than the cool, careful,

    21    reflective sifting of the evidence so that here, in this

    22    courtroom, justice truly may be done.

    23          I am the judge of the law.  It is my duty to

    24    explain the law to you and you have to follow the law the

    25    way I explain it.  If you have any questions about the law,

1    once you get out there deliberating, write your question

2    out, we'll have you back in here, I'll explain it again, or

3    I'll explain it further.  I have to explain it so you

4    understand it because it's going to be you people who apply

5    the law to the facts as you find the facts to be.

6         So, this is really like a law school class.  And

7    it's a little more formal because you have to write your

8    question out.  This is a law school class about this type of

9    case.  And I'm trying to build for you a mental framework

10   within which you, and you alone, are going to decide what

11   the evidence shows or what it doesn't show.  So, the fact

12   that I have to build a complete mental framework, don't

13   think I think anything's proved or anything's not proved.

14   I'm explaining all the things, the places where your

15   analysis could go.  Likewise, don't grab onto something I

16   say and say, Aha, the case turns on this or that.  Listen to

17   the whole charge.

18        So, I'm emphasizing now that you must base your

19   conclusions on the evidence.  So let me say a word about

20   evidence.  The evidence in this case is of two forms, and

21   I've mentioned them, the testimony of the witnesses and

22   those two exhibits.  First let's deal with the testimony of

23   the witnesses.

24        Anything a witness has testified to from the

25   witness stand, as you are jurors, you may believe it.  If I

 1    let you hear it you may believe it.  But equally, you may

 2    disbelieve it and disregard it as though the witness never

 3    took the witness stand.  You may believe parts of what a

 4    witness testified to and disbelieve other parts.  As we

 5    listened to this evidence certain things are not disputed

 6    here, whether it was testified to by Mr. Lu or one of the

 7    police officers.  Other things are disputed.  The stick

 8    business is disputed.  You're not prevented from reaching a

 9    verdict because one witness testifies to one thing under

10    oath and another witness testifies to a different thing

11    under oath and they can't both be right.  As you are

12    reasonable men and women you may resolve that dispute.  You

13    may decide where the truth lies.

14            Now, how do you do it?  You're entitled to use

15    everything that you know about any of these witnesses from

16    observing them here on the witness stand.  How did they

17    answer questions.  Now, that's not fair to Mr. Lu.  Because

18    he wasn't asked questions when he was testifying himself,

19    and that's necessary.  But you are entitled to listen to how

20    they answered questions, all of these witnesses, and Mr.

21    Lu's testimony, how did it hang together.  I mean, did it

22    make sense.  Did the answers make sense.  How did the people

23    react when they were asked questions.  Did they demonstrate

24    an ability to understand what was going on, accurately to

25    observe what was going on, accurately to recall what

1    transpired out there at the time and place that's at issue

2    here.

3              You really may consider everything you know about

4    these witnesses.  Do they stand to gain or lose anything

5    depending upon how the case comes out.

6              Are they friends with, associated with, partners of

7    one of the parties or another.  Does that color their

8    testimony?  Is anyone putting a spin on anything here?

9              In short, as you are reasonable men and women, you

10   may sum up a witness's testimony.  You may decide what to

11   believe.  Do the testimony, or does the testimony of one

12   witness back up the testimony of another witness.

13             Now, the case is not to be decided based upon the

14   number of police officers who testified as opposed to Mr.

15   Lu's testimony standing alone.  It's not the number of

16   witnesses.  It's the believability, the probity of the

17   testimony.  And that's left to you.

18             Now, we do have the two exhibits.  Now, exhibits

19   are evidence.  And so you're going to want to look at an

20   exhibit and you're going to want to see what it is.  Your

21   analysis of an exhibit should be twofold.  It's not a

22   problem here that in this digital world that the exhibit is

23   a copy.  There's no real dispute about authenticity here.

24   There was no objection on Mr. Lu's part to you seeing these

25   exhibits.  So you look at them and you see what are they.

1    And then you relate them to the testimony of the witnesses

2    and you see what you can learn from the exhibits, what do

3    they tell you.

4          Now, your power with respect to exhibits is just

5    the same and it's just as broad as it can be.  You can

6    believe everything an exhibit says.  But equally, you can

7    disbelieve and disregard an exhibit.  If you think that it

8    doesn't help you, or it isn't accurate, you just put it off

9    to one side, pay no attention to it.  You can believe part

10   of what an exhibit says and disbelieve other parts.  And

11   again, you have in mind who filed the document, who wrote it

12   out, when was it written out.  How fresh were things in that

13   person's mind.  Did that person have a position with respect

14   to this case.  Is there any spin put on what went on.  Is

15   there anything left out that you would expect to be in

16   there.  All of those things you may consider.  In fact, as

17   reasonable men and women, you may consider whatever

18   reasonably occurs to you.

19         Now, that's the evidence in the case.  Now, from

20   that evidence you may draw what are known as reasonable

21   inferences, logical deductions, common sense.  You're not

22   asked nor are you expected to check your common sense at the

23   door to the jury room.  Just the reverse.  I charge you to

24   apply your common sense to the evidence that you have in

25   this case to the end that justice may be done.

1          But you can't guess.  You can't speculate.  You're

2    not in there considering maybe, perhaps, could have been, or

3    even probably.  The burden of proving a violation of his

4    civil rights rests on Mr. Lu.  The burden is proof by a fair

5    preponderance of the evidence.  That means that on those

6    things I'm going to tell you Mr. Lu has to prove, he's got

7    to satisfy you unanimously that those things are more likely

8    to be true than not true.

9          Now, let me give you an example of a reasonable

10   inference.  It has nothing to do with this case.  It's my

11   stock example.  Let's say -- this is a wholly different

12   case.  But let's say we have a witness and she testifies

13   she's walking along a road and she passes a field of barley.

14   You know barley.  Beautiful green stalks, gray tasseled tops

15   used in making whiskey.  And she looks out and she sees in

16   an irregular course through that field that the barley's

17   lying down.  And that's her testimony.  And you believe it.

18         Now, from that testimony standing alone you

19   reasonably can infer something went through that field.

20   Because if it had been a windstorm or a hail storm all the

21   barley would have been knocked over.  Something went through

22   there.  But if that's all the evidence you have, you can't

23   reach a conclusion as to what.  An animal.  A human.  Big

24   animal.  Small.  Child.  Adult.  Someone on a dirt bike.

25   You don't know.  There would have to be other evidence.

1          So, when you go back to the jury room you can't

2    guess, you cannot speculate, but you can draw the reasonable

3    inferences from the evidence that you have.

4          Let me mention two things that are not evidence in

5    this case.  First, I want to say, and counsel herself

6    mentioned this about Mr. Lu, Mr. Lu has acted perfectly

7    appropriate as a person, people have their rights to present

8    their own case, that is a constitutional right, but they

9    have to obey my orders so that the trial goes along

10   smoothly, and Mr. Lu has done that and he's done it fine.

11   And so have the lawyers.  They're exemplary examples of the

12   legal profession.  No one's taken any advantage here.  Each

13   side has had a chance to present their evidence to you.

14         Now, the reason I mention that, and I compliment

15   Mr. Lu and the attorneys, and I do so genuinely, but having

16   said it, disregard it.  You know, how the attorneys behave

17   out in the well of the courtroom, how Mr. Lu behaves out in

18   the well of the courtroom, is all perfectly satisfactory to

19   the Court for the smooth running of the case, but it doesn't

20   count.  If what they've argued to you and how they've framed

21   their questions, if that helps you understand the central

22   things in the case, all well and good.  That's what Mr. Lu

23   was trying to do, that's what the attorneys are trying to

24   do.  But it doesn't make any difference.

25         And likewise, if the manner in which they have

1    behaved, and I'm telling you they've behaved fine, if

2    somehow that grated on you, just reacted negatively to it,

3    don't hold it against them.  Don't hold it against Mr. Lu.

4    Don't hold it against Mr. Horgan's attorneys.  That's not

5    fair either.  They're trying their best.  Your focus is on

6    the evidence when people got on the witness stand.

7            Now, equally important.  If you think that I have

8    any view about this case, any view at all, I most earnestly

9    instruct you to disregard it.  And I tell you I don't.  I

10   have no view about this case.  Through Mr. Lu's cooperation

11   and the attorneys' skills this case has been narrowed down

12   to really a central issue, and I'm going to get to it now.

13   But don't you speculate about any of that.  And don't

14   speculate that I've got some view about that central issue.

15   I don't.  It's a triable issue, which means a jury under the

16   constitution has to decide it.  And just as I've told you,

17   I'm not talking to Ms. Gaudet, Mr. Womack, any of the

18   Court's staff, about the evidence and the credibility or

19   believability of the evidence.  Because it's not my

20   business.  That's for you.  So, no clues from me about how

21   the case comes out.  I have none to give you.

22            This I tell you.  And if this is bias, I

23   acknowledge it.  I believe passionately in the jury system.

24   I believe that you men and women will do justice in this

25   case.  You will determine what the evidence proves or fails

1   to prove.  I have nothing to say about it.

2           Now, let's pass out the verdict slips and now

3   let's, let's get to the specifics of this case.

4           (Whereupon the verdict slip was passed out to the

5   jurors.)

6           **THE COURT:**  This is a so-called civil rights case,

7   so-called because Mr. Lu claims that his rights under the

8   Fourth Amendment to be free from an unreasonable search have

9   been violated.  And that right is encompassed in laws, both

10  state laws and federal laws, that he has a right to rely

11  upon and he, he brings his suit based on those laws.

12          Now, what does he have to prove?  Well, the first

13  thing that he has to prove, though it's up to you whether

14  he's proved it or not, but I can tell you it's not really

15  disputed, he has to prove that Mr. Horgan, in the

16  interaction that Mr. Lu had with Mr. Horgan, Mr. Horgan was

17  acting as an agent of government.  No real dispute that he

18  was.  He's been here every day in his uniform as an officer

19  of the Boston Police Department, as a government officer, an

20  officer who, within the appropriate constitutional limits,

21  has police power to preserve the peace.  Now, that gives him

22  certain authorities, authority within constitutional limits.

23  So I don't really see that there's any dispute but what he

24  was acting under color of law.  There's no personal beef

25  here.  He was acting as a police officer.

1          Now, I've allowed you to hear testimony about the

2     whole incident from the time really before anyone called the

3     police until the time the police left and Mr. Lu is walking

4     away.  You've heard the whole thing.  And it's appropriate

5     that you hear the whole thing because you're going to judge

6     the believability or the credibility of these people based

7     upon what was going on out there on Ring Road on that day.

8     But the specific claim now is narrowed.  The specific claim

9     is this.  Mr. Lu claims that there was an unreasonable

10    search of his person.  The search of his person occurred

11    when Mr. Horgan, and there may very well be dispute in the

12    details, but the way I heard it, there's really no dispute

13    that Mr. Horgan did take his hands, touched Mr. Lu, took Mr.

14    Lu's personal effects out of his back pocket.  Now, once

15    those personal effects were taken out of his back pocket, as

16    I heard the evidence, but it's for you, it's not for me to

17    say, it appears that there's no dispute that they were, they

18    were placed on the ground.  Now, this other business about a

19    twig and the like, that's left entirely to you.  But at

20    least taking things out of his back pocket, Mr. Lu's back

21    pocket, which necessarily meant he had to be touched there,

22    to take those things out of his back pocket and put them on

23    the ground, that's a search.  That's a search.

24          Now, understand that the law does not protect Mr.

25    Lu against a reasonable search.  It protects him against an

1    unreasonable search.  And in narrowing things down, let's

2    see those things which are not complained of here.

3         Mr. Lu makes no complaint that his civil rights

4    were violated because the police were called.  He makes no

5    complaint that his civil rights were violated because he was

6    stopped.  And the police officers have a right to stop an

7    individual, make an investigatory stop investigating

8    allegations of a crime.  Mr. Lu doesn't complain about that.

9         Mr. Lu doesn't complain in the circumstances of

10   this case, or in fairness, we'll say I've narrowed it down,

11   the fact that he was touched and indeed his hands were

12   cuffed behind his back, we're not asking you about that.

13   That, as far as the law is concerned, that goes with the

14   interaction.  So, if you believe those things happened you

15   certainly may consider it, but Mr. Lu cannot recover

16   anything in this case because those things happened.  His

17   complaint is that the search of his person, at least his

18   back pockets of his pants, and taking what was in there and

19   putting it out, which was a search, he claims that's an

20   unreasonable search under the Fourth Amendment.

21        What is the test?  The test is not what's going on

22   in Mr. Horgan's mind.  I'll call him Officer Horgan.  No

23   doubt he's a police officer.  In Horgan's mind.  The test is

24   would a reasonable police officer, acting in the line of

25   duty, and knowing all the things that Mr. Horgan knew,

1    Officer Horgan knew, would that officer have concluded that

2    there was a reasonable suspicion that Mr. Lu, in that area,

3    in his pockets, was possessed of a weapon that could harm

4    the officers, harm passersby, or harm himself.

5          Now, that is to be judged through the eyes of a

6    reasonable police officer.  I'm not saying Officer Horgan

7    was not reasonable.  But it's not what Officer Horgan

8    himself thought.  It's what you decide a reasonable police

9    officer would have thought about the likelihood of there

10   being something, the weapon can be small, something in those

11   pockets that gave Officer Horgan reasonable suspicion.  A

12   hunch is not good enough.  There has to be specific

13   articulable circumstances.  Articulable means you've got to

14   be able to explain it.  And indeed circumstances were

15   mentioned here.  And you're entitled to consider all those

16   circumstances that you believe.  Remember, the judgment

17   about what a reasonable police officer would have thought

18   and would have done is a judgment made through the eyes of a

19   reasonable police officer out there on Ring Road that

20   morning, not here in the quiet of the courtroom answering

21   questions.

22         Now, three things I should mention.  Each one of

23   these things are circumstances, if you believe them, and you

24   may take them all together along with all the other

25   circumstances.  But for these three, no one of these three

1    standing alone justifies the search of his back pockets.

2    Mr. Lu's back pockets.

3         First, there appears to be no doubt that Mr. Lu,

4    when asked, refused to give his name.  Now, in circumstances

5    where they had information of an assault and battery, the

6    fact that he refused to give his name where they may well

7    have thought, Officer Horgan may have thought he fit the

8    description, certainly that's suspicious.  That may be the

9    ground for stopping him, indeed, holding onto him, making

10   him stay there until they've run a warrant search and they

11   checked everything out and the other officers walked back to

12   Shaw's and found out about it.  But Mr. Lu makes no

13   complaint about that.  That's not a ground to search his

14   person, to go into his pockets.  That's a search.  It's all

15   right to stop him but -- everybody has a right to refuse to

16   give their name.  Make no doubt about that.  There's no

17   violation.  There's no requirement of identification.  While

18   it may be perfectly, and in the circumstances of this case

19   it was perfectly reasonable to ask him his name, a person

20   doesn't have to give their name.  And if they don't, well,

21   that may be suspicious, but it's not, standing alone,

22   grounds for a search.

23        Second, it may be perfectly reasonable for the

24   officer, Officer Horgan, and the other officers, to infer,

25   we talk about inferences, to infer that he's got these bags,

1   no dispute he's got bags, that Mr. Lu is a homeless person.

2   The fact he's a homeless person standing alone is not

3   grounds to search him.  It may be true, it's up to you

4   whether you believe it, it may be true that homeless

5   persons, because they live on the street, are more likely

6   than other people to carry weapons either for their

7   protection or for some other reason.  That may well be true.

8   I don't -- that's all up to you, whether you believe that or

9   not.  But that does not make homeless people as a class of

10  people subject to police search.  If that were true that's

11  what we call profiling.  You say, well, he's a homeless

12  person.  We can search him.  That's not the law.  It is a

13  circumstance that you have to consider with all the other

14  circumstances.

15          And, lastly, this.  You're entitled to consider

16  this circumstance.  You're entitled to consider, if you

17  believe that that's what Officer Horgan thought, that Mr. Lu

18  was homeless.  You're entitled to consider that Mr. Lu, a

19  suspect in an offense, wouldn't give his name.  I'm just

20  saying that standing alone each of those separate

21  circumstances don't justify a search.

22          And here's the third one.  If you believe this

23  stick business and you believe that that's a weapon, the

24  testimony from the officer here is about this plus one

25  business, that they're taught that if you have a weapon it's

1    more likely that you have another weapon.  Now, that may be

2    true.  You decide that.  You decide it after listening to

3    the officers.  But standing alone that does not justify a

4    search of his pockets, standing alone.  And the reason for

5    that is it isn't for the officers to decide, the fact that

6    they teach it that way, if you think they do, and that those

7    circumstances were present here, if you think they were,

8    that's not for them to decide.  You decide as jurors what's

9    a reasonable search.  That determination is given to the

10   people, through their jurors, not to officers who set up

11   some training regime.  I don't criticize the training

12   regime.  I mean, it's fair to say, you know, Officer Horgan

13   didn't ask to be there.  He was on duty.  He got called.  He

14   had to go there.  He was expected to as part of his duty.

15   He was expected to interact with Mr. Lu.  He was expected to

16   enforce the law.  That's what we pay him for.  So he didn't

17   ask to be there.  But they can't have their own internal,

18   they say, well, this is over the line and it justifies a

19   search.  Maybe.  But a jury decides that.  He doesn't decide

20   that.

21          Now, in picking out those three circumstances, and

22   remember there are other circumstances, but I pick out those

23   three simply to say this and to emphasize it.  Standing

24   alone neither one of them, none of those three make the

25   search reasonable.  Taken together, along with the other

1    circumstances, it's up to you whether it's reasonable.

2         Remember the burden of proof.  The burden of proof

3    is not on Officer Horgan to say it was a reasonable search.

4    The burden is on Mr. Lu to prove by a fair preponderance of

5    the evidence that it's an unreasonable search.  Mr. Lu is

6    suing Mr. Horgan.

7         Now, if you think that the search of the pockets,

8    including what happened to the materials in the pockets

9    thereafter, as you decide it, if you come to believe that

10   Mr. Lu has not proved that that search was unreasonable then

11   you will find for Mr. Horgan and the case is over.

12        Let's assume -- and the fact that I'm going to

13   charge you now on damages doesn't mean that I think that

14   they're proved or not proved.  But let's assume you believe

15   that Mr. Lu has proved by a fair preponderance of the

16   evidence that it's more likely than not that under these

17   circumstances, even though they could hold him, even though

18   they could put handcuffs on him and check for warrants and

19   consider whether the allegations here were justified,

20   remember, police officers are not persons who judge, but the

21   allegations justified an arrest, the time it took to do

22   that.  No, no complaint by Mr. Lu about that.

23        Suppose you decide that under all the

24   circumstances, the search of his pockets and whatever

25   happened to the materials thereafter, that was not, that he

1  has proved that it was an unreasonable search.  Then you'll

2  find for Mr. Lu.  And then you're asked the question on that

3  verdict slip to assess the damages.

4      Now, the fact that there's been a constitutional

5  violation does not mean that Mr. Lu gets some set amount of

6  money.  If you violate the Fifth Amendment it's this amount.

7  If you violate the Second Amendment it's this amount.  That

8  isn't the way it works.  For there to be any damages he

9  would have to prove that he was damaged in some way.  The

10  first thing, however, you're to consider is whether to award

11  him nominal damages.

12      Let's say you think his constitutional rights were

13  violated but he didn't really suffer anything from having

14  his personal effects taken out and put on the ground there,

15  and whatever else was done to them.  There's no sum of money

16  that will encompass that.  Then you are entitled, if you

17  think there's been a violation, to award nominal damages,

18  one dollar.  And that says Mr. Lu has proved it but there

19  was no real damages.

20      Now, that's one thing you can do.  Another thing

21  you can do, if he has proved damages by a fair preponderance

22  of the evidence, you can award him what are known as

23  compensatory damages.  Well, what would the compensatory

24  damages be in this case.  It appears undisputed that while

25  he was dispossessed of his personal effects for a period

1    none of them were taken.  He hasn't lost them.  So we put a

2    value on the things that were in his back pockets.  But he

3    is entitled to whatever humiliation.  He's entitled to

4    emotional damages.

5           Now, remember, we're not counting the fact that he

6    is forced to stay there with police officers around him with

7    his hands shackled behind his back.  That may be

8    disconcerting and humiliating.  I mean, they're not too far

9    away from the supermarket.  One can reasonably infer that

10   other people are seeing this.  In the circumstances of this

11   case he can't be compensated for any of that.  But you could

12   believe that he was caused humiliation from having his

13   personal effects, toiletries, his I.D. card, taken out of

14   his pockets.  The touching, which you could infer that's

15   offensive.  People are entitled to bodily integrity.  If

16   this went over the line and it was an unreasonable search,

17   he's entitled to recover, insofar as money will do it, for

18   the touching in his back pockets and for taking his personal

19   things out and putting them on the ground.  Then there's

20   this other business that, the twig business, that it was

21   dealt with, you could infer in a demeaning manner.  If you

22   believe that.  If you don't believe that he can't be

23   compensated for that.  But if you, if you believe that

24   evidence then he's entitled to compensatory damages for that

25   misconduct insofar as money will do it.  Money damages are

1    not awarded to Mr. Lu to reward him for bringing this

2    lawsuit.  They're not to be awarded for any other purpose

3    than fully or fairly, and fairly to compensate him for the

4    emotional harm that he suffered from the search, but nothing

5    else.

6         There's a third type of damages.  In addition to

7    compensatory damages it is possible for you to find punitive

8    damages.  Punitive damages are a fine on Mr. Horgan for

9    violating the constitution.  They only apply in, we say

10   egregious circumstances, an especially bad violation of the

11   constitution.  And those exemplary or punitive damages, like

12   a fine on Mr. Horgan, that's to send him, him a message

13   don't ever do this again.  Don't ever violate a person's

14   civil rights in this way.  Now, punitive damages are left to

15   you.

16        Now, in this, in this verdict slip I gave you, I

17   just leave a blank there.  And I say assess damages of

18   blank.  Here's my specific instructions.  If Mr. Lu wins

19   and your verdict is for him -- remember, I'm not suggesting

20   anything one way or another, but you need to know

21   everything.  If he wins then, if it's just going to be

22   nominal damages, I expect a dollar to be written in there.

23   If it's compensatory damages you put in the compensatory

24   damages.  Theoretically you could have no compensatory

25   damages but you could have punitive damages, the fine.  If

1    you are going to award punitive damages, and remember that

2    takes extra proof on Mr. Lu's part, that this particular

3    violation was extreme, it was egregious, but if you find for

4    punitive damage, and it's left to you, put a P before it.

5    So, in fact you could have two separate amounts.  You could

6    write in an amount for compensatory damages and then below

7    it put a P and write in the amount of the fine if you

8    unanimously come to believe that punitive damages are

9    appropriate in the circumstances of this case.

10          Now, that's the charge.  Let me just say a few

11    words about your deliberations.

12          Mr. Foreman, as foreman, it doesn't mean you do all

13    the talking, nor does it mean you keep your mouth shut.  I'm

14    really talking to all of you.  Set things up in there now so

15    that all twelve of you now can talk about the case.

16          You'll take your notebooks with you.  You may use

17    your notebooks.  Remember, your notes are just for you.

18    Don't pass your notes around, because the juror who didn't

19    take notes is just as good as a juror who did.  But if it

20    refreshes your recollection, you've got your notes there.

21    We only need one verdict slip, though you may take all those

22    verdict slips, and that's from the foreman.

23          So, set things up in there where you can all

24    express your views in circumstances where the rest of you

25    can listen to those views and react and express what you

     1     think about the evidence in this case.

     2          It's probably not a good idea to take a straw vote

     3     at the outset and say, okay, how many are for this and how

     4     many for that.  The reason that's not a good idea is that

     5     you might think, since you are under oath to do justice

     6     here, that having expressed your view initially you're bound

     7     to stick with it.  If you have any strong view about the

     8     evidence in this case, in any aspect, by all means stick to

     9     it.  You'll violate your oath if this goes on for a while

    10     and then ten are for something and the other two go along so

    11     that everyone can go home.  That's worse than if we didn't

    12     even have a trial.  That's not justice.  The requirement of

    13     the law is that it be unanimous.  It has to be unanimous for

    14     Mr. Horgan, the first option, unanimous for Mr. Lu, the

    15     second option, and then unanimous as to whether he gets

    16     nominal damages, compensatory damages, punitive damages.

    17          And the reason that a straw vote is not a good idea

    18     is it's perfectly all right to change your mind.  Just no

    19     going along with the majority.  But now listen to each other

    20     because you are under the same oath, you've all heard the

    21     same evidence, you all have the same duty to do justice.

    22     So, if the views of your fellow jurors, if they persuade

    23     you, and your initial reaction is a little different once

    24     you've listened to your fellow jurors, that's fine.  That's

    25     what jury deliberations are.

 1          Now, there's no outside limit on how long you

 2   deliberate, except that we'll get you lunch around 12:30.

 3          **THE CLERK:**  Yes.

 4          **THE COURT:**  All right.  And if we get to about ten

 5   minutes of 5:00 and you're still deliberating, I have an

 6   appropriate charge for you, you can come back tomorrow and

 7   continue.  We ask you for your verdict.  We do not demand

 8   it.

 9          Now, if you have a question write your question

10   out, we'll bring you back in here, I'll explain that.

11          When you've arrived at a verdict and you're all

12   agreed, the foreman makes the appropriate notation, sign

13   your name and date it, tell the court security officer you

14   have a verdict.  Don't give it to him, just tell him you

15   have it.  He sets up -- Ms. Gaudet sets things up in here.

16   And if you come back in the afternoon it will prove to you

17   we work in the afternoon.  We'll stop whatever's going on in

18   here.  You're all brought in.  And she'll say to you:

19   Ladies and gentlemen of the jury, have you reached a

20   unanimous verdict?  And you bring the verdict slip in with

21   you.  And if you say yes, I assume that that's why you're

22   back, and she will say:  Will you pass the verdict slip.

23   It's passed.  It comes to me first, everyone looks at me,

24   and I look at it just to see that it's logical.

25          Now, here's a logical verdict in this case.  You

1    can find for Mr. Horgan.  You can find for Mr. Lu.  You can

2    find for Mr. Lu and award him one dollar.  You can find for

3    Mr. Lu and award him compensatory damages and punitive

4    damages, no compensatory damages, but punitive damages,

5    compensatory damages and no punitive damages.  Those are the

6    logical options.  And by going over all those options don't

7    for a moment think I suggest that any of them apply.  But

8    those are the logical options.  If you come back and the

9    verdict slip is blank, I don't know what to do.  If you've

10   checked both for Mr. Horgan and for Mr. Lu, I don't know

11   what to do.  But so long as the verdict slip is logical, I

12   say the verdict is in order, it may be recorded, give it to

13   Ms. Gaudet.  She'll ask you to stand up.  You all stand up.

14   And that's the only time in the whole proceeding you stand

15   up and we all sit here, we look at you.  And then she will

16   read out the verdict in open court.  If, as you stand there,

17   you are satisfied with the consciousness of your duty

18   faithfully performed, you will have done what's required of

19   you as jurors.  The word verdict comes from two Latin words,

20   and they mean to speak the truth, and that is what is asked

21   of you in this case, to speak the truth.

22        Now, I may have left something out, I may have

23   misstated something, and before we send you out, Mr. Lu and

24   the lawyers get a chance to bring that to my attention.

25

1    SIDEBAR CONFERENCE, AS FOLLOWS:

2            **THE COURT:**  Satisfied with the charge?  All right.

3    You're not?

4            **MR. LU:**  I don't, I don't have objections.

5            **THE COURT:**  Well, now's the time for objection.

6            **MR. LU:**  No, I need two clarifications.  When you

7    say three things standing alone, you cannot, you cannot

8    search and so on.  I hope you can clarify search for the

9    pockets or search for the weapons.

10           And the second clarification I request is that

11   when, if the weapons just imagine in the back pocket the

12   whole contents can't be pulled out.  And so that's --

13           **THE COURT:**  I'm satisfied with the charge.

14           Satisfied?

15           **MS. LOUGHLIN:**  Your Honor, in terms of compensatory

16   damages, I don't believe there's been any testimony

17   regarding emotional damages here.

18           **THE COURT:**  Oh, but one can infer it.  I'm

19   satisfied.

20           **MS. LOUGHLIN:**  Thank you.

21           Your Honor, I just have one more.  We're looking

22   for an additional instruction, in order to violate rights

23   under 1983 the officer needs to have acted intentionally or

24   recklessly, mere negligence is not enough.

25           **THE COURT:**  But there's no dispute that he acted

1    intentionally.  I mean, he acted intentionally.  It's not

2    that he stumbled into him and took it out.

3           No, I'm not giving that.  Because he doesn't have

4    to intend to violate the constitution because officers are

5    taught, even with the qualified immunity business, they're

6    taught that they can't do unreasonable searches.  And this

7    is, in my view this is the only piece of it, is a triable

8    issue.  So I'm going along the logic that I've tried the

9    whole case on already.

10          **MS. LOUGHLIN:**  Okay, thank you.

11          (Whereupon the sidebar conference concluded.)

12          **THE COURT:**  The jury may retire and commence their

13   deliberations.  I'll remain on the bench.

14          **THE CLERK:**  All rise for the jury.

15          (Whereupon the jury left the courtroom at 10:28

16   a.m.)

17          **THE COURT:**  Please be seated.

18          Well, first, Mr. Lu, you have conducted yourself in

19   a fully appropriate way like a gentleman, and I thank you.

20   And the same is true of counsel.  You haven't taken

21   advantage, you've tried this case very well.  I can say to

22   Officer Horgan that he's been very well represented here,

23   and I thank you.

24          Now, just --

25          **MS. LOUGHLIN:**  Thank you, your Honor.

1            **THE COURT:**  -- logistically, I have sentencings

2    this afternoon.  You're welcome to stay here this morning

3    because this concludes what I have in this courtroom for the

4    morning.  But you, of course, can be present in the

5    courtroom through the afternoon.  But you're free to go.  If

6    the jury asks a question, I will consult you if I can find

7    you within five minutes.  So if you leave, Ms. Gaudet needs

8    to know where you're going.  She's ordered lunch for them

9    for 12:30, if they're still deliberating, but we can never

10   predict because they get their lunch right in the jury room

11   and none of the Court staff are going anywhere so we can

12   respond if they have a question or they have a verdict.

13           Likewise, if they are still deliberating at the end

14   of the day, I bring them in the courtroom to give them the

15   appropriate instructions at the end of the day, and

16   frequently people want to be here.  So understand, be here

17   by around ten of 5:00 because I'll bring them to give

18   instructions.

19           Sometimes they may ask to stop before 5:00.  That's

20   like a question.  If I can find you within five minutes,

21   we'll let you know.

22           The courtroom is a big courtroom and you are free

23   to be in the public area of the courtroom throughout the

24   afternoon.  There's the little room, witness preparation

25   room.  Ms. Gaudet just needs to know where to find you.

1    And so I thank you.  We'll recess.

2    **THE CLERK:**  All rise.

3    **MS. LOUGHLIN:**  Okay.  Thank you, your Honor.

4    (Recess.)

5    **THE CLERK:**  All rise for the jury.

6    (Whereupon the jury entered the courtroom at 12:10

7    p.m.)

8    **THE CLERK:**  Court is in session, you may be seated.

9    **THE COURT:**  I've received the following question,

10   and I'll read it:  Under the law is the person who matches

11   the description of a suspect in an assault and battery in

12   and of itself enough to justify a search?

13   Is that the question, Mr. Foreman?

14   **THE FOREMAN:**  That's correct.

15   **THE COURT:**  Is that the question, ladies and

16   gentlemen of the jury?

17   **THE JURY:**  Yes.

18   **THE COURT:**  To that question, I make this answer.

19   That's the formal way to do it.

20   No.  In and of itself, assault and battery not

21   being an arrestable offense, does not justify a search.  If,

22   however, they had arrested him for being a disorderly person

23   then there could be a search incident to the arrest because

24   they would have to inventory his effects and the like since

25   they would have to then transport him, book him, and bring

1    him before a neutral magistrate, a form of judge in the

2    state courts, where he would make bail or the determination

3    would be made whether he made bail.  If they were going to

4    take him into custody like that, not for assault and

5    battery, but for something else, then incident to an arrest

6    a search may be made.

7         That's my answer to -- now, that doesn't mean that

8    the search here was wrong.  But this was a search where

9    there was no arrest, no warrant for his arrest, and it's

10   judged on the standard of objective reasonableness since

11   clearly there was enough to have the interaction and stop

12   him and find out the situation.

13        That's my answer to the question.  The jury may

14   retire and continue their deliberations.

15        **THE CLERK:**  All rise for the jury.

16        (Whereupon the jury left the courtroom at

17   12:12 p.m.)

18        (Recess.)

19        **THE CLERK:**  All rise for the jury.

20        (Whereupon the jury entered the courtroom at 1:07

21   p.m.)

22        **THE CLERK:**  Court is in session, you may be seated.

23        Mr. Foreman, members of the jury, has the jury

24   reached a unanimous verdict?

25        **THE FOREMAN:**  Yes, they have.

1          **THE CLERK:**  Please pass the slip.

2          (Papers passed.)

3          **THE COURT:**  The verdict is in order, it may be

4    recorded.

5          **THE CLERK:**  Mr. Foreman, members of the jury,

6    please stand and listen to the verdict as the Court records

7    it.

8          Jury verdict.  We find for Friedrich Lu and assess

9    damages of one dollar.

10          So say you, Mr. Foreman?

11          **THE FOREMAN:**  That's correct.

12          **THE CLERK:**  So say you, members of the jury?

13          **THE JURY:**  Yes.

14          **THE COURT:**  Please be seated.

15          Ladies and gentlemen, I want to thank you.  I would

16    thank you whatever your verdict was.  But really I thank you

17    most sincerely for the care, the attention, the obvious

18    thoroughness that you have given to this case.

19          Now the case is over.  I would like to come back

20    and thank you personally.  But you're free to go.  Under the

21    rules of court no one involved in this case may contact you

22    in any way, and I can assure you no one will.  We're very

23    strict on that.  But they wouldn't do it.  I cannot say that

24    the press would not contact you, though I don't understand

25    any press involvement in this case.

1          You're free to say anything to anyone about

2     anything.  And now that the case is over, I can only urge

3     you in this respect.  If someone talks to you about the case

4     it's best not to talk about what went on in the jury room;

5     that's private to the twelve of you.  By your verdict you've

6     spoken the truth about this case.  Anything that went on

7     here in open court you have absolute right to say anything.

8          We do thank you most sincerely.  And I'll ask you

9     just to stay for a moment so I can thank you.

10         We'll stand in recess.

11         **THE CLERK:**  All rise for the jury.

12         (Whereupon the jury left the courtroom.)

13         (Adjournment.)

14

15

16

17

18

19

20

21

22

23

24

25

1                    **C E R T I F I C A T E**

2

3

4          I, Donald E. Womack, Official Court Reporter for

5    the United States District Court for the District of

6    Massachusetts, do hereby certify that the foregoing pages

7    are a true and accurate transcription of my shorthand notes

8    taken in the aforementioned matter to the best of my skill

9    and ability.

10

11

12

13

14          /S/ DONALD E. WOMACK 8-3-2013
            _____
15             DONALD E. WOMACK
             Official Court Reporter
                P.O. Box 51062
16        Boston, Massachusetts 02205-1062
              womack@megatran.com

17

18

19

20

21

22

23

24

25